IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 17-cv-00781-RBJ

EUGENE F. FERRARO, an individual,

 Plaintiff,
v.

CONVERCENT, INC., a Delaware corporation,
O'NEAL PATRICK QUINLAN, III, an individual,
STEVE FOSTER, an individual, and
NEBBIOLO VENTURES, LLC, a Colorado limited liability company,

 Defendants.

---

ORDER ON PARTIAL MOTIONS TO DISMISS

---

  This matter is before the Court on two motions: (1) defendants Convercent, Quinlan, and Foster's partial motion to dismiss plaintiff's complaint, ECF No. 15; and (2) defendant Nebbiolo Ventures's partial motion to dismiss the complaint, ECF No. 19. For the reasons stated below, Convercent, et al.'s motion is GRANTED in part and DENIED in part, and Nebbiolo's motion is GRANTED.

**I. FACTS**

  Mr. Ferraro founded a company in 1994 that eventually became known as Convercent, Inc. (referred to as "Convercent" or "the Company"). ECF No. 1 at 4. The Company offered phone and web hotline services for anonymous whistleblowers, along with investigative, consulting, and training services. *Id.* In 2012, as part of an effort to find outside investors, one of Mr. Ferraro's employees, Mr. Foster, introduced Mr. Ferraro to a consulting firm called Nebbiolo, led by Mr. Quinlan. *Id.* Mr. Quinlan promised Mr. Ferraro that Nebbiolo would

1

quickly increase the Company's value.  *Id.* at 5–6.  Mr. Foster represented to Mr. Ferraro that he had performed the requisite due diligence on Nebbiolo and its members, and he told Mr. Ferraro that the firm was reputable and accredited despite his knowledge that the contrary was true.  *Id.* at 6.  In fact, according to Mr. Ferraro, Nebbiolo was not an accredited investor and had only existed for four months, while Mr. Quinlan and a previous firm had been the focus of a lawsuit that included allegations of fraud against Mr. Quinlan personally.  *Id.* at 6.  Furthermore, Mr. Foster did not disclose that he had recently made more than a $60,000 investment in (or loan to) Nebbiolo.  *Id.* at 7.

In reliance on Mr. Foster's and Mr. Quinlan's representations, Mr. Ferraro entered into a Professional Services Agreement ("PSA") with Nebbiolo in 2012.  *Id.* at 8.  Under the PSA, Nebbiolo would provide financial and management consulting services in exchange for a fee and equity in the Company; Mr. Quinlan would replace Mr. Ferraro as the Company's CEO; and Mr. Foster would be the "one authorized representative" of the Company to whom Nebbiolo would report.  *Id.*  Mr. Quinlan "repeatedly assured" Mr. Ferraro that his "continued employment was guaranteed."  *Id.*  Thereafter, Mr. Quinlan replaced Mr. Ferraro as CEO and the Company paid Nebbiolo its consulting fee and sold Nebbiolo stock for an equity position in the Company.  *Id.* at 8-9.  However, because Nebbiolo claimed it lacked the funds to purchase the Company's stock outright at the time the PSA was signed, Mr. Ferraro accepted a four-year note for $1.95 million from Nebbiolo for the stock purchase.  *Id.* at 9.

After Mr. Quinlan began spending "significant amounts of company funds," Mr. Ferraro discussed with Mr. Foster whether he should terminate the PSA for non-performance.  *Id.*  Mr. Foster urged him "to give Nebbiolo time to perform."  *Id.*  At the same time, unbeknownst to Mr. Ferraro, Mr. Quinlan and Mr. Foster created and back-dated a stock purchase agreement, giving

Nebbiolo additional time to achieve its objectives, changing the terms of a previously-existing promissory note, and reducing Nebbiolo's purchase price of company shares. *Id.* at 10. Mr. Ferraro claims he accepted this agreement only under duress. *Id.*

In 2013 Mr. Ferraro entered an employment agreement to serve as Convercent's Chief Ethics Officer for three years. *Id.* at 11. The agreement contained no renewal provision, but Mr. Quinlan assured Mr. Ferraro that it would be renewed if the Company were not sold by the end of the agreement's three-year term. *Id.* The agreement also required the Company to pay Mr. Ferraro $5,000 per month for each month he remained a guarantor on certain corporate loans if the loans were not satisfied by July 2013. *Id.* at 12. When Mr. Ferraro sought to renew this agreement in 2015 he was assured that his position was secure, and that the agreement would be renewed. *Id.* at 14. In March 2015 Mr. Ferraro learned that Mr. Quinlan had taken $65,000 of company funds for personal use without the Board of Directors' knowledge. *Id.* at 14. As Chief Ethics Officer, Mr. Ferraro sought to investigate the matter, but he was prevented from doing so. *Id.*

In January 2016 Mr. Ferraro was informed that the Company would not be renewing his employment agreement. *Id.* at 15. Mr. Ferraro was told that the Company could hire and employ four people for what he was being paid, and that he no longer provided value or services the Company needed. *Id.* at 15–16. His last day of employment was January 3, 2016. *Id.* at 18. He did not receive any customary outplacement services, such as severance pay or a letter of reference. *Id.* at 15. Mr. Ferraro requested that the Board of Directors investigate his termination and Mr. Quinlan's use of company funds. *Id.* at 16. The Company denied wrongdoing related to Mr. Ferraro's termination and characterized Mr. Quinlan's use of funds as a loan, but it did not verify that it had conducted an investigation into either. *Id.* at 17–19.

Mr. Ferraro filed suit in March 2017, asserting a total of twelve claims. ECF No. 1. Convercent, Mr. Quinlan, and Mr. Foster move to dismiss plaintiff's claim of wrongful discharge in violation of public policy against Mr. Quinlan, his breach of contract claim against Convercent, and his civil conspiracy claim against Mr. Quinlan and Mr. Foster. ECF No. 15. Nebbiolo moves to dismiss plaintiff's claim against it for violation of the Colorado Organized Crime Control Act (COCCA). ECF No. 19. The motions have been fully briefed. *See* ECF Nos. 15, 18, 19, 23, 24, 30.

## II. STANDARD OF REVIEW

To survive a 12(b)(6) motion to dismiss, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plausible claim is a claim that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the Court must accept the well-pleaded allegations of the complaint as true and construe them in the light most favorable to the plaintiff, *Robbins v. Wilkie*, 300 F.3d 1208, 1210 (10th Cir. 2002), purely conclusory allegations are not entitled to be presumed true, *Iqbal*, 556 U.S. at 681. However, so long as the plaintiff offers sufficient factual allegations such that the right to relief is raised above the speculative level, he has met the threshold pleading standard. *See, e.g.*, *Twombly*, 550 U.S. at 556; *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008).

## III. ANALYSIS

### A. <u>Wrongful Discharge Claim Against Mr. Quinlan.</u>

Mr. Ferraro asserts that he was fired for trying to exercise his right to investigate Mr. Quinlan's unauthorized use of Convercent funds and another Convercent employee's facilitation

4

of that use. ECF No. 1 at 24. This, he claims, was a violation of public policy, therefore constituting the tort of wrongful discharge. Convercent, Mr. Quinlan, and Mr. Foster move to dismiss this claim as against Mr. Quinlan, contending that Colorado courts do not recognize individual liability for public policy wrongful discharge claims. ECF No. 15. I agree.

Courts in this district have held that "there is no individual liability for a public policy wrongful discharge claim under Colorado law." *Jeffers v. Denver Public Schools*, No. 16-CV-02243-CMA-MJW, 2017 WL 2001632, at *7 (D. Colo. May 11, 2017) (citing *Ayon v. Kent Denver School*, No. 12-CV-02546-WJM-CBS, 2013 WL 1786978, at *6 (D. Colo. Apr. 26, 2013)). Indeed, a claim for public policy wrongful discharge asserted against a supervisor individually rather than against the employer itself must be dismissed because "'a claim for wrongful discharge is predicated on the existence of an employment relationship.'" *Spaziani v. Jeppesen Sanderson, Inc.*, No. 14-CV-REB-KMT, 2015 WL 5307971, at *3 (D. Colo. Sept. 11, 2015) (quoting *Ayon*, 2013 WL 1786978).

Plaintiff urges the Court to depart from this precedent. Specifically, he criticizes the court's reasoning in *Ayon*. There, the court noted a dearth of case law about the individual liability of agents of a defendant employer for wrongful discharge claims, but it ultimately adopted the principle that "an agent is not personally responsible for a breach of an employment relationship, *unless* the agent created the relationship *without first disclosing* the responsible principal corporation to which he answered as an agent." 2013 WL 1786978, at *7–*8 (citing *Leonard v. McMorris*, 63 P.3d 323 (Colo. 2003)) (emphasis in the original). Plaintiff implies that the *Ayon* court improperly relied on *Leonard* because the latter was based on "agency principles and corporate law governing liability of an officer for breach of a corporate contract or for a corporate debt." ECF No. 18 at 4. Instead, plaintiff argues for the application of tort

5

principles, under which he argues that "an officer of a corporation is personally liable for his or her participation in the tort, even though committed on behalf of a corporation." *Id.*

However, plaintiff derives support from tort cases that are unrelated to wrongful discharge. *See id.* (citing *Vaske v. DuCharme, McMillen & Assoc., Inc.*, 757 F. Supp. 1158, 1166 (D. Colo. 1990) (after granting summary judgment in defendants' favor on a wrongful discharge claim, the Court found that individual defendants could be personally liable for the remaining tort claims that survived summary judgment); *Hoang v. Arbess*, 80 P.3d 863, 867–68 (Colo. App. 2016) (finding a defendant could be individually liable for negligence, negligent misrepresentation, and negligent nondisclosure); *Galie v. RAM Assocs. Mgmt. Servs., Inc.*, 757 P.2d 176, 177 (Colo. App. 1988) (finding defendants could be individually liable for negligence and negligent misrepresentation)). Additionally, plaintiff skips the fact that the *Ayon* court expressly noted the context out of which *Leonard* emerged but nonetheless decided to apply its principles to the wrongful discharge claim context. *See Ayon*, 2013 WL 1786978, at *7–8 (noting that *Leonard* was a Wage Claim case rather than "a wrongful discharge claim *per se*," but deciding to adopt its principle in the wrongful discharge context).

Because plaintiff has not pled that Mr. Quinlan was his employer or that Mr. Quinlan created an employment relationship between Mr. Ferraro and Convercent without disclosing Mr. Quinlan's employment relationship with Convercent, individual liability does not attach. As such, defendants' motion to dismiss plaintiff's claim for wrongful discharge against Mr. Quinlan is GRANTED.

### B. Breach of Contract Claim Against Convercent.

Plaintiff claims that Convercent breached its employment agreement in which it promised to either remove Mr. Ferraro from all guarantees by July 1, 2013 or pay him $5,000 per month

thereafter until the guarantees were terminated. ECF No. 1 at 24. Defendants move to dismiss this claim on the grounds that it is barred by the statute of limitations. ECF No. 15 at 6.

In Colorado, breach of contract actions must be commenced within three years of the accrual of the cause of action. Colo. Rev. Stat. § 13-80-101(1)(a). An action for breach of contract accrues when the breach "is discovered or should have been discovered by the exercise of reasonable diligence." *Id.* § 13-80-108(6); *see also Nelson v. State Farm Mut. Auto. Ins. Co.*, 419 F.3d 1117, 1121 (10th Cir. 2005). According to defendants, since plaintiff claims that he should have been removed from all guarantees by July 1, 2013, he "could have exercised reasonable diligence on that date to determine if, in fact, he had been removed." ECF No. 15 at 6. As such, defendants argue that plaintiff's cause of action accrued in July 2013 and was therefore time barred when it was filed more than three years later in March 2017. *Id.*

The statute of limitations is an affirmative defense that is generally decided either on a motion for summary judgment or at trial. *Gainzero v. Wal-Mart Stores, Inc.*, No. 09-CV-00656-REB-BNB, 2011 WL 1085647, at *3 (D. Colo. Mar. 24, 2011). It can be decided against a plaintiff on a motion to dismiss under Rule 12(b)(6) only "when the application of the limitations period is apparent on the face of the complaint." *Id.* (citing *Dummar v. Lummis*, 543 F.3d 614, 619 (10th Cir. 2008). This is not such a case.

It is not evident from plaintiff's complaint at what point he knew or should have known that he had not been removed from the guarantees or that he was not being paid $5,000 per month thereafter. Plaintiff does not bear the burden to provide this information at this stage; instead "defendants bear the burden of submitting evidence to establish this affirmative defense." *Gainzero*, 2011 WL 1085647, at *3. Defendants' contention that he "could have exercised reasonable diligence" on July 1, 2013 to determine whether he had been removed from the

7

guarantee does not answer whether, in the exercise of reasonable diligence, he *should* have discovered that he had not been removed by that date (or by any other date before March 28, 2014, three years before this case was filed).

In his response, plaintiff argues that he exercised reasonable diligence to determine if he had been removed from the guarantees. ECF No. 18 at 5. He refers—by way of exhibits—to inquiries he made to defendants prior to July 1, 2016 about whether he had been removed from the guarantees. *Id.* at 6. However, unless I convert plaintiff's motion to dismiss into a motion for summary judgment, I am limited to determining the sufficiency of the complaint based on the complaint's contents alone. *See* Fed. Rule of Civ. Pro. 12(d); *see also Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010). As a result, I will not rely on plaintiff's exhibits.

However, I do not agree, as defendants contend, that plaintiff's reliance on such exhibits belies the fact that his complaint is insufficiently pled. ECF No. 24 at 5. Instead, I find that while plaintiff's complaint does not provide details about the due diligence he did or did not perform after July 1, 2013, it provides no reason to conclude that he must or should have known immediately on that date or thereafter that the guarantees had not been terminated or that his name had not been removed. As such, it is not clear from the face of the complaint that his cause of action must have accrued immediately on July 1, 2013 or on any given date thereafter such that his claim is barred by the statute of limitations. Defendants' motion to dismiss this claim is therefore DENIED.

### C. Civil Conspiracy Claim Against Mr. Quinlan and Mr. Foster.

Plaintiff alleges that Mr. Quinlan and Mr. Foster agreed through words or conduct "to obtain control over the Company and wrongfully terminate Mr. Ferraro through unlawful

8

means." ECF No. 1 at 29. Defendants argue that plaintiff's "bare assertions" of a conspiracy fail to sustain his burden at the motion to dismiss stage. ECF No. 15 at 7.

To establish a civil conspiracy claim under Colorado law, Plaintiff must demonstrate:

> (1) an object to be accomplished; (2) *an agreement by two or more persons on a course of action to accomplish that object*; (3) in furtherance of that course of action, one or more unlawful acts which were performed to accomplish a lawful or unlawful goal, or one or more lawful acts which were performed to accomplish an unlawful goal; and (4) damages to the plaintiff as a proximate result.

*Mecca v. United States*, 389 F. App'x 775, 779–80 (10th Cir. 2010) (emphasis added). Here, defendants argue that plaintiff has failed to provide factual allegations supporting his "bare assertion" of an agreement between the parties. ECF No. 15 at 7.

"[T]o survive a Motion to Dismiss, a complaint must present 'enough factual matter (taken as true) to suggest that an agreement was made… [and] to raise a reasonable expectation that discovery will reveal evidence of illegal agreement.'" *Beltran v. InterExchange, Inc.*, 176 F. Supp. 3d 1066, 1072 (D. Colo. 2016) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). An agreement may be established by either direct or circumstantial evidence. *Id.* Courts may not infer an agreement necessary to form a conspiracy, but instead plaintiffs must present evidence of such an agreement. *Medved v. DeAtley*, No. 12-CV-03034-PAB-MEH, 2013 WL 4873054, at*10 (D. Colo. Sept. 11, 2013). Plaintiff "must at the very least allege 'a course of conduct and other circumstantial evidence . . . providing some indicia of agreement in an unlawful means or end.'" *Scott v. Hern*, 216 F.3d 897, 918 (10th Cir. 2000) (quoting *Schneider v. Midtown Motor Co.*, 854 P.2d 1322, 1327 (Colo. App. 1992).

Pleadings are insufficient where they merely "generally aver[] that defendants 'agreed, by words or conduct, to accomplish an unlawful goal or accomplish a goal through unlawful means.'" *Mecca*, 389 F. App'x at 780. The court in *Mecca* noted that it could not "infer from defendants' independent acts an agreement to realize" a potentially unlawful goal. *Id.*

Defendants urge this Court to similarly find that there are no factual allegations supporting the assertion of an agreement in this case. ECF No. 15 at 7. I am not convinced.

Contrary to defendants' contention, plaintiff has provided "some setting suggesting the agreement necessary" to make a claim of civil conspiracy. *Twombly*, 550 U.S. at 557. Plaintiff alleges that Mr. Foster, then President of the Company and an employee of Mr. Ferraro's for over ten years, willfully concealed information about Nebbiolo's abilities and reputation and did not reveal his own association with the firm when he introduced Mr. Ferraro to Nebbiolo in 2012. ECF No. 1 at 5–8. Mr. Foster and Mr. Quinlan later allegedly worked together to create a more favorable stock purchase agreement without informing Mr. Ferraro. *Id.* at 9–10. Finally, Mr. Foster urged Mr. Ferraro not to terminate the PSA with the Company despite Mr. Ferraro's concerns about Mr. Quinlan's and Nebbiolo's activities. *Id.* at 9. I find that, if true, these factual allegations are suggestive of an illegal agreement. It is difficult to imagine Mr. Foster's engaging in this course of action against Mr. Ferraro's interest without agreeing with Mr. Quinlan about how to proceed. Thus, these factual allegations exceed mere "parallel conduct" and suffice to suggest an agreement. *Shimomura v. Carlson*, 17 F. Supp.3d 1120, 1130 (D. Colo. 2014).

Because plaintiff has provided "enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement," *Twombly*, 550 U.S. at 556, defendants' motion to dismiss this claim is DENIED.

### D. Colorado Organized Crime Control Act Claim Against Nebbiolo.

Plaintiff alleges that Nebbiolo, Mr. Quinlan, and Mr. Foster violated the Colorado Organized Crime Control Act ("COCCA"), Colo. Rev. Stat. §§ 18-17-101, *et seq.* ECF No. 1 at 30. In particular, plaintiff argues that "Nebbiolo and its members, along with Mr. Foster, are 'an

enterprise'" that "engaged in a scheme to take control of the Company illicitly and through a pattern of racketeering." *Id.* Nebbiolo raises only one argument in seeking dismissal of the COCCA claim, i.e., that Plaintiff failed to plead his COCCA claim with particularity. ECF No. 19 at 2. Nebbiolo argues that plaintiff's complaint "asserts in conclusory fashion that at least two acts of fraud occurred but does not state which acts constitute that fraud, how many instances of fraud there were, or whether each instance allegedly constituted mail fraud versus wire or securities fraud." ECF No. 19 at 4. I agree.

COCCA makes it illegal for "any person, through a pattern of racketeering activity . . . to knowingly acquire or maintain, directly or indirectly, any interest in or control of any enterprise." C.R.S. § 18-17-104(2). Additionally, it is unlawful for any person employed by or associated with an enterprise "to knowingly conduct or participate, directly or indirectly, in such enterprise through a pattern of racketeering activity." *Id.* § 18-17-104(3). A pattern of racketeering activity is defined as "engaging in at least two acts of racketeering activity which are related to the conduct of the enterprise. *Id.* § 18-17-103(3). Plaintiff contends that an enterprise comprised of Nebbiolo, its members, and Mr. Foster violated COCCA by engaging in a pattern of fraud with the purpose of acquiring an interest in or control of Convercent. ECF No. 1 at 30–31. The pattern of racketeering activity plaintiff alleges defendants engaged in includes two or more acts of wire, mail, and securities fraud. *Id.* at 30.

"It is well-established that if the predicate[] acts underlying a COCCA claim are fraudulent acts, the circumstances must be pled with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure and the Colorado Rules of Civil Procedure." *Henson v. Bank of Am.*, 935 F. Supp.2d 1128, 1137 (D. Colo. 2013). Rule 9(b) requires that a party claiming fraud or mistake must state "with particularity the circumstances constituting fraud or mistake." ECF

No. 19 at 2–3. "So for example, where mail or wire fraud is alleged as a predicate act, 'the plaintiff must specify the time, place, and content of the alleged false representation and describe with particularity any allegedly fraudulent transaction, and how the particular mailing or transactions furthered the fraudulent scheme.'" *Henson*, 935 F. Supp. 2d at 1137–38 (quoting *Weiszmann v. Kirkland & Ellis,* 732 F. Supp. 1540, 1546 (D.Colo.1990)).

In this case, although plaintiff provides facts about communications and representations made by Nebbiolo, Mr. Quinlan, and Mr. Foster (ECF No. 1 at ¶¶ 21–80), he has not explained which of these representations constituted fraud, whether the alleged fraud was mail, wire, or securities fraud, and whether the particular instances of alleged fraud should be attributed to one or more of the defendants in particular. Moreover, plaintiff does not explain how each of the particular communications or transactions "furthered the fraudulent scheme." *Henson*, 935 F. Supp.2d at 1137–38. Because I cannot determine which predicate acts support plaintiff's COCCA claim against Nebbiolo, the motion to dismiss with respect to this claim is GRANTED, but the dismissal in this instance must be without prejudice.[1]

## ORDER

For the reasons stated above, defendants Convercent's, Mr. Quinlan's, and Mr. Foster's partial motion to dismiss [ECF No. 15] is GRANTED in part and DENIED in part. Plaintiff's wrongful discharge claim against Mr. Quinlan is dismissed with prejudice, but the motion is otherwise denied. Defendant Nebbiolo's partial motion to dismiss [ECF No. 19] is GRANTED. The COCCA claim against Nebbiolo is dismissed without prejudice.

DATED this 19th day of October, 2017.

---

[1] Although plaintiff may move to amend his complaint, I will not grant a motion to amend based solely on his response to the defendant's motion to dismiss. *See* ECF No. 23 at 4; D.C.COLO.LCivR 7.1(d) ("A motion shall not be included in a response or reply to the original motion").

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge